# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MIGUEL SANTIAGO,
     Plaintiff,
       v.
CAROLYN W. COLVIN, Acting Commissioner of
Social Security,
     Defendant.

No. 3:14-cv-1956 (MPS)

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

## I.    Introduction

This is an administrative appeal following the denial of the plaintiff, Miguel Santiago's,

application for disability insurance benefits and supplemental security income. It is brought

under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Santiago now moves for an order reversing the decision of the Commissioner of the

Social Security Administration ("Commissioner"). In the alternative, Santiago seeks an order

remanding his case for a rehearing. The Commissioner, in turn, has moved for an order affirming

her decision.[1]

The issues presented are whether (1) the ALJ erred in characterizing the evidence; (2) the

plaintiff has impairments that are recognized by the Listing of Impairments in 20 C.F.R. §

404.1525; (3) the ALJ failed to apply properly the treating physician rule; (4) the ALJ

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* C.F.R. §§ 404.929 et seq. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967 et seq. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States District Court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

improperly assessed the plaintiff's credibility; (5) the ALJ improperly determined the plaintiff's residual functional capacity; and (6) the ALJ improperly determined that the plaintiff could perform his past relevant work.

For the following reasons, Mr. Santiago's motion for an order reversing or remanding the ALJ's decision is denied and the Commissioner's motion for an order affirming that decision is granted.

## II.    Facts

Mr. Santiago suffers from polysubstance abuse, several mental health disorders, and certain physical ailments. On March 28, 2011, Mr. Santiago filed an application for disability benefits for an alleged disability that commenced on June 1, 2009.[2] (*Id.* at 63, 65.) On July 4, 2011, a disability adjudicator in the Social Security Administration denied his initial request for disability benefits and thereafter denied his request for reconsideration. (*Id.* at 63.)

On January 24, 2013, he appeared with counsel for a hearing before an Administrative Law Judge.  On March 8, 2013, the ALJ issued a decision denying benefits. (*Id.* at 60–76.) On October 29, 2014, the appeals council denied Mr. Santiago's request for review of that decision thereby making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–7.) This appeal followed.

## III.    Scope of Review

District courts perform an appellate function when reviewing a final decision of the Commissioner under 42 U.S.C. § 405(g). *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir.1981). A reviewing court will uphold an ALJ's decision unless it is based upon legal error or

---

[2] Mr. Santiago was last insured on June 30, 2009. In order to be entitled to disability insurance benefits, a plaintiff must "have enough social security earnings to be insured for disability, as described in § 404.130." 20 C.F.R. § 404.315(a)(1).

is not supported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir.1998). "'Substantial evidence' is less than a preponderance, but 'more than a mere scintilla' and as much as 'a reasonable mind might accept as adequate to support a conclusion.'" *Crossman v. Astrue*, 783 F. Supp. 2d 300, 303 (D. Conn. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether the evidence is substantial, a district court must "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also New York v. Sec'y of Health & Human Servs.*, 903 F.2d 122, 126 (2d Cir. 1990) (stating that the court is required to "review the record as a whole" in assessing whether the evidence supports the Commissioner's position) (citations omitted). Still, the ALJ need not "reconcile every conflicting shred of medical testimony . . . ." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision." *Morris v. Barnhardt*, No. 02 CIV. 0377 AJP, 2002 WL 1733804, at *4 (S.D.N.Y. July 26, 2002). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). Courts cannot supply a new or different rationale for an administrative agency's decision. *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943).

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). To determine

whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step

evaluation process as promulgated by the Commissioner.[3]

## IV.    The Administrative Law Judge's Decision

The ALJ determined that Santiago was not disabled. At step one, the ALJ determined that

the plaintiff has not engaged in substantial, gainful activity since June 1, 2009, the onset of his

alleged disability. (R. at 65.) At step two, the ALJ determined that the plaintiff had the following

severe impairments: polysubstance abuse, depression, obsessive compulsive disorder, and

generalized anxiety disorder. (*Id.* at 65–66.) At step three, the ALJ determined that the plaintiff

did not have a listed impairment or impairment equal to a listed impairment in Appendix 1 of the

regulations. (*Id.* at 66–68.) At step four, the ALJ determined that the plaintiff had the residual

functional capacity to perform his past work as an injection-molding machine tender and a store

laborer. (*Id.* at 68–73.) In so doing, the ALJ gave "little weight" to the opinions of the plaintiff's

treating physician who provided psychiatric care and gave "the greatest weight" to the opinions

of a social worker who led the plaintiff in group treatment.

---

[3] The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)–(v).

## V.     Discussion

### A.     The ALJ's Characterization of the Record

The plaintiff argues that a remand is required because the ALJ mischaracterized the record in three ways. (ECF No. 18-1 at 10–11.) First, the ALJ said that Mr. Santiago's "primary diagnosis has been substance abuse rather than any acute mental illness." (*Id.*) Second, the ALJ said that Mr. Santiago "is able to care for his young child." (*Id.*) Third, the ALJ described Dr. Richard Feuer's treatment of Mr. Santiago as medication management services. (*Id.*)

When an ALJ's determination is not supported by substantial evidence, a social security plaintiff is entitled to an order reversing or remanding the case. *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). It is not enough for a plaintiff to point to evidence that contradicts the ALJ's determination if that determination is supported by substantial evidence. *Id.* "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (internal citations and quotations omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* at 447–48 (internal citations and quotations omitted).

### 1.     Mr. Santiago's "Primary Diagnosis"

The ALJ determined that the Mr. Santiago suffers from severe impairments including polysubstance abuse, depression, obsessive compulsive disorder, and generalized anxiety disorder and "noted that the claimant's primary diagnosis has been substance abuse rather than any acute mental illness." (R. at 65, 70.) The plaintiff takes issue with the ALJ's statement about substance abuse being a "primary diagnosis." The ALJ's finding is supported by substantial

evidence. The ALJ considered that Mr. Santiago first sought treatment to obtain sobriety (*id.* at 70), which the record reflects (*e.g.*, *id.* at 359.) The ALJ stated, with support from the record, that the plaintiff was treated in the context of substance abuse remission. (*Id.* at 70.) The record shows that the plaintiff was medicated to treat his drug addiction. (*E.g. id.* at 306; *see also* ECF No. 25-1 at 22 (collecting record citations).) While the plaintiff says that the "ALJ is wrong" because he has been diagnosed with several mental illnesses (ECF No. 18-1 at 10), the ALJ agreed that several of these mental illnesses—depression, obsessive compulsive disorder, and generalized anxiety disorder—constituted severe impairments, and analyzed them together with the plaintiff's polysubstance abuse. (R. at 65). Thus, the record is not so devoid of evidence that Mr. Santiago's "primary diagnosis" was substance abuse that "a reasonable factfinder would *have to conclude otherwise,*" *Brault*, 683 F.3d at 448, and, in any event, the plaintiff fails to show how this characterization has prejudiced him.

### 2. *Mr. Santiago's Care for his Child*

The plaintiff argues that the ALJ was wrong to determine that Mr. Santiago can care for his young child and that the ALJ's own opinion contradicts that finding. (ECF No. 18-1 at 10.)

The ALJ's statement that Mr. Santiago "is able to care for his young child" does not contradict the finding that "the claimant testified that he has not lived with the child for approximately two years and stated that he only sees the child twice per week," as the plaintiff claims. (R. 70, 72.) Simply because a person does not live with a child does not mean that the person is unable to care for the child.

There is substantial evidence to support the ALJ's finding that Mr. Santiago can care for his child. The ALJ accurately noted that "treatment notes reflect that the claimant appears to take his parenting responsibilities seriously and it is noted that he is attentive and appropriate with his

child." (*Id.* at 70, 436, 445, 479, 492, 506, 508.) For example, Dr. Feuer noted that the plaintiff "seems to take parental responsibility with appropriate seriousness." (*Id.* at 492.) Sara Miller, MSW led the plaintiff's group therapy sessions and described how the plaintiff cared for his young son at a therapy session. (*Id.* at 436.) Even if it is true, as the plaintiff argues, that Mr. Santiago said that did not want to harm the child, struggled to parent, and was irritable after his son was born, the plaintiff must do more than point to evidence that contradicts an ALJ's decision that is supported by substantial evidence. *Brault*, 683 F.3d at 448. Here, there is substantial evidence for the ALJ's determination that the plaintiff is able to care for his young child. (R. at 70, 436, 445, 479, 492, 506, 508.)

### 3.   Dr. Feuer's "Medication Management Services."

The plaintiff contends that the ALJ erred by stating that Dr. Feuer provides "[only] medication management services since 2009." (ECF No. 18-1 at 10.) The plaintiff misconstrues the record. The ALJ said "Dr. Feuer has provided the claimant with medication management services since 2009." (R. at 71–72.) The ALJ's statement is supported by substantial evidence because it accurately describes Dr. Feuer's treatment notes, which consistently describe the reason for his appointments as "Med mngt." (*E.g.*, *id.* at 400.)

### B.   Whether the Plaintiff Has a "Listed Impairment"

If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed or equivalent to a listed impairment in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience which the claimant could perform. 20 C.F.R. § 416.920(a)(4)(ii)–(iii). The plaintiff contends that the ALJ overlooked one

or more "listed impairments" in the Listing of Section 12.04 contained in 20 C.F.R., Part 404, Subpart P, Appendix 1. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The plaintiff bears the burden of establishing his disability. *Schauer v. Schweiker*, 675 F.2d 55, 57–58 (2d Cir. 1982). For the reasons discussed below, there is substantial evidence to support the ALJ's determination that the plaintiff did not have a "severe impairment" under Section 12.04.

### 1.    The Section 12.04 Standard

Section 12.04 concerns affective disorders, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." Section 12.04 has three parts. The plaintiff can show that he has an affective disorder sufficiently severe to qualify as disabling in two ways; he can satisfy the requirements of paragraphs A and B, or he can satisfy the requirements of paragraph C. The ALJ determined that he could not satisfy paragraphs B or C.

Although the plaintiff states that he "is markedly impaired in every area of functioning evaluated under Listing 12.04," he only provides an argument that he satisfies the first three criteria of Paragraph B. (*See* ECF No. 18-1 at 13–14.) Paragraph B is satisfied if the plaintiff's condition results in two or more of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04(B). The Social Security Administration "does not define 'marked' by a specific number of different behaviors in which

social functioning is impaired, but by the nature and overall degree of interference with function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(C)(2).

### 2.    Activities of Daily Living

In making the determination that the plaintiff had a "mild restriction" in his activities of daily living, the ALJ noted that the plaintiff "is able to adequately take care of his personal hygiene, grooming and household chores;" that the plaintiff "is consistently well nourished and appropriate dressed;" and that the plaintiff lives with a roommate in a sober living residence, which he maintains without "any outside assistance." (R. at 67.) Mr. Santiago points to evidence that he struggles to parent, that he is "distressed when having activities of daily living," that his OCD troubles him, and that his son's mother does not trust him with his son. (ECF No. 18-1 at 13–14.) Nevertheless, there is enough evidence "for a reasonable mind [to] accept as adequate to support [the] conclusion" of the ALJ. *Crossman*, 783 F. Supp. 2d at 303 (internal quotations and citations omitted). For example, the plaintiff worked part-time and cared for his son during the relevant period. (*E.g.*, *id.* at 310, 325, 479, 553.) The record shows that the plaintiff dressed well and had good hygiene. (R. at 273, 410.) There is, therefore, substantial evidence to support the finding that the plaintiff did not have a "marked restriction" in the activities of daily living.

### 3.    Social Functioning

The ALJ determined that the plaintiff has "moderate difficulties" in social functioning. (R. at 67.) As the ALJ noted, treatment records show that the plaintiff "is generally described as cooperative," he is "actively involved, supportive and appropriate" in group therapy, and he "consistently demonstrated [the] capacity to seek and establish an intimate relationship" and "to maintain an appropriate relationship" with his former partner "to facilitate the care of the couple's son." (*Id.*) This conclusion is supported by substantial evidence in the record. For

example, Dr. Feuer noted that the plaintiff was "cooperative" and "friendly." (*Id.* at 557.) His social worker, similarly, noted how Mr. Santiago "participated adequately and appropriately" and "was supportive to other members who shared" in group therapy. (Id. at 348, 414.) Dr. Feuer recorded the plaintiff's reports about an imperfect but functioning relationship with his partner. (*E.g.*, *id.* at 492, 508 ("Reports work is ok and he and partner are 'doing better.' He seems to take parental responsibility with appropriate seriousness.").) While the plaintiff points to some evidence that does not support the ALJ's conclusion, such as evidence that Mr. Santiago lost his job "for mouthing off to [his] boss" and Mr. Santiago's testimony that he stays home for six days a week, (ECF No. 18-1), the plaintiff has not shown that the ALJ's determination that the plaintiff has "moderate difficulties" in social functioning is not supported by substantial evidence. *Crossman*, 783 F. Supp. 2d at 303 ("Substantial evidence is less than a preponderance, but more than a mere scintilla and as much as a reasonable mind might accept as adequate to support a conclusion." (internal citations and quotations omitted)).

### 4. *Difficulties Maintaining Concentration, Persistence, or Pace*

The ALJ determined that the plaintiff had "moderate difficulties" with concentration, persistence, or pace:

> Although the claimant has complained of some difficulty concentrating, his treating therapist, Sara Miller, L.C.S.W. opined that the claimant had no limitations in the area of task performance. (Exhibit 4F) Moreover, treatment records note that the claimant appears to consistently demonstrate an intact thought process. (Exhibits 4F and 11F)

(R. at 67.) In response, the plaintiff points to evidence that Mr. Santiago cannot concentrate; he testified that he spends many nights "looking, checking the doors, checking the windows that are closed . . . ." (ECF No. 18-1 at 14 (citing R. at 106–07).) He also points to his testimony that he feels nervous, trapped, shakes, and cannot breathe. (*Id.*) He said:

> When I'm in the house, I'm in my own zone. I'm in my own place where I feel safe. I don't feel like you know, I'm going to, some people's watching me what I'm doing. Or some people are just looking at me and staring at me, you know? But that's what I feel like, people are staring at me, you know? The people are just, you know, judging me and staring at me and watching me what I'm doing. So, when I'm in the home, I don't want nobody to see me, what I'm doing, you know, things that I do.

(R. at 107.)

The ALJ relied on the 2011 opinion of Sara Miller, his treating therapist, who said that the plaintiff had no problems carrying out multi-step instructions, focusing long enough to finish simple tasks, changing from one task to another, performing work activities at a reasonable pace, and performing work activities for eight hours a day, five days a week. (*Id.* at 411–12.) Given that the plaintiff's treating therapist considered the plaintiff to be capable of maintaining concentration, persistence, and pace, the ALJ's decision is supported by substantial evidence.

### 5.   *Episodes of Decompensation*

The ALJ noted that the record was devoid of evidence of extended periods of decompensation. Episodes of decompensation "are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). The ALJ found that there was no evidence of episodes of decompensation, and the plaintiff has pointed to none. Therefore, the ALJ's decision was supported by substantial evidence.

Because there is substantial evidence to support the ALJ's conclusion under Section 12.04, I deny the motion to remand on this ground.

### C.    The Treating Physician Rule

The plaintiff argues that the ALJ failed to adhere to the treating physician rule. (ECF No. 18-1 at 15.) Under that rule, the Commissioner gives the opinions of treating physicians and other "acceptable medical sources" controlling weight as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with" other substantial evidence in the record. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The ALJ must "explicitly consider" several factors to "override the opinion of the treating physician," *i.e.*, "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue,* 708 F.3d 409, 418 (2d Cir. 2013). "The failure to provide 'good reasons' for not crediting [a treating physician's] diagnosis by itself warrants remand." *Id.* at 419 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Still, an ALJ need not address every iota of evidence in the record. *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

The plaintiff contends that the ALJ misapplied the treating physician rule as to Dr. Richard Feuer. Dr. Feuer is a physician who treated the plaintiff for at least three and a half years. (R. 632.) Dr. Feuer provided "medication management" to treat plaintiff for Post-Traumatic Stress Disorder, Obsessive-Compulsive Disorder, and drug addiction. (*See, e.g.*, *id.* at 582.) The physician explained that other than the drug addiction, which is in remission, the plaintiff's conditions continue to be "significantly symptomatic" despite "aggressive medication treatment." (*Id.* at 632.)  He went on to describe that the plaintiff's psychiatric conditions affected his stress tolerance, his anger control, his ability to regulate his mood and affect, his

concentration, and his capacity to tolerate interpersonal situations to such a degree to "make it impossible for him to maintain regular competitive employment."[4] (*Id.*)

Here, the ALJ properly applied the treating physician rule. In deciding to give "little weight" to the letter from Dr. Feuer, the ALJ complied with the regulations and thoroughly explained her reasoning. First, the ALJ is not required to defer to Dr. Feuer's legal conclusion that the plaintiff is "disabled" and therefore entitled to benefits because he is unable to work. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Second, the ALJ considered the frequency, length, nature, and extent of treatment provided by Dr. Feuer, noting that Dr. Feuer had provided "medication management" to the plaintiff for three years and citing records detailing the dates of visits. (*Id.* at 71–72.) She next considered the amount of medical evidence supporting the opinion; she said:

> "Dr. Feuer relies on the claimant's 'life stressors' as support for his opinion that the claimant cannot sustain employment. Specifically Dr. Feuer indicates that the claimant's difficulty managing his anger and irritability is exacerbated by overwhelming challenges related to the care of a young child with developmental disabilities. While the undersigned empathizes with this life situation, namely the challenge of caring for a young child with a developmental disorder, caring for a developmentally challenged child is not a medically determinable impairment that can provide a basis for disability according to the law and regulations."

(*Id.*) She also pointed out that the plaintiff has not lived with his child for two years and sees the child only twice a week. (*Id.*) The ALJ then noted that Dr. Feuer's opinion was inconsistent with his treatment notes and the remaining medical evidence. The ALJ pointed out that Dr. Feuer's own notes showed that the plaintiff "is psychiatrically holding his own in spite of stressors" and "holding his own with respect to mood, thought processes and behavior." (*Id.*) His treatment

---

[4] After the ALJ issued her opinion, Dr. Feuer wrote again. (R. at 11.) He said "I firmly believe on the basis of my treatment of the patient for several years, that he is incapable of maintaining regular employment due to psychiatric disability." (*Id.*) Dr. Feuer emphasized that the plaintiff "exhibits episodes of agitation accompanied by rage manifest in verbal and physical aggression." (*Id.*) As a point of comparison, Dr. Feuer explained that he would place the plaintiff among the most impaired third of his patients that have been determined eligible for disability benefits. (*Id.*)

notes also showed that the plaintiff "reported his medication was effective at relieving his feelings of being overwhelmed." (*Id.*) The ALJ thus concluded that "Dr. Feuer's opinion is entitled to no more than little weight."

Because the ALJ was not required to accord any weight to Dr. Feuer's legal opinions that the plaintiff could not work or was disabled, because she considered the requisite factors in deciding how much weight to give to any medical opinions by Dr. Feuer, and because her description of the medical evidence is supported by substantial evidence in the record, the ALJ complied with the treating physician rule.

### D.  The Plaintiff's Credibility

"Generally speaking, it is the function of the ALJ, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence of record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  In determining credibility, the ALJ must first determine if the claimant's subjective complaints could "reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a). If the objective evidence does not support the plaintiff's testimony with respect to functional limitations and pain, the ALJ considers the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include daily living activities, any medications and treatments and their efficacy, and any other relevant factors. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be

expected to cause the alleged statements" but that the "claimant's subjective allegations are not supported by the medical evidence of record." (R. at 69.)

The plaintiff argues that the ALJ's conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible," (*id.*), "is based on erroneous reasons, and is therefore not supported by substantial evidence" (ECF No. 18-1 at 19). Specifically, the plaintiff points to the ALJ's assessment of the plaintiff's relationship with his child and his work history. (*Id.*)

First, the plaintiff argues that the record reflects that Mr. Santiago has problems caring for his child. (*Id.*) That is true. His therapist wrote "Client reported having difficulty with his son and parenting." (R. at 461.) There is, however, substantial evidence that the plaintiff could care for his son as discussed above in Part V.A.2. Mr. Santiago argues that his ability to care for his son does not mean that he is able to work. (ECF No. 18-1 at 19.) In other words, the ability to care for one's child is not a sufficient condition for the ability to work. While that may be true, it is not relevant to the issue here, which is whether the ALJ made a proper credibility determination. The issue before the ALJ was whether Mr. Santiago was credible. The ALJ found that he was not credible in part because he claimed that he could not care for his son, but there was substantial evidence showing that his statement was not true. (R. at 69–70.) The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence of record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Especially because the ALJ had the opportunity to observe the plaintiff's demeanor while testifying, and I did not, I cannot find that her credibility finding was not supported by substantial evidence.

Second, the plaintiff argues that the ALJ acknowledged his "good work record" and that the ALJ must consider that record when determining credibility. (ECF No. 18-1 at 19.) There is no error here. The ALJ did consider the plaintiff's work record and her explanation of it provides support for her overall credibility determination:

> In addition to significant childcare responsibilities, the claimant has consistently reported working, at least part-time, throughout the record. Treatment records indicate that the claimant had done odd jobs and worked for his landlord in exchange for discounts on rent. Although this work activity does not rise to the level of disqualifying substantial gainful activity, it suggests that the claimant's residual functional capacity for work is greater than alleged.

(R. at 70–71. (internal citations omitted).)

Therefore, the ALJ did not err in weighing the plaintiff's credibility when it found his testimony about his ability to function to be inconsistent with his documented work history and his ability to care for a child, among other evidence in the record.

### E.     The Residual Functional Capacity Determination

Residual functional capacity ("RFC") is "what an individual can still do despite his or her limitations." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*  RFC is "an assessment based upon all of the relevant evidence . . . [which evaluates a claimant's] ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions." 20 C.F.R. § 220.120(a).

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . ." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

However, the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.*

Here, the ALJ found:

> that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can respond appropriately to occasional and superficial interaction with the general public. He can respond appropriately to coworkers and supervisors for work related matters without teamwork or collaboration. He can understand, remember and carry out simple, routine and repetitive tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis. The claimant can make simple work related decisions and adapt to simple, occasional changes in the routine work setting.

(R. at 68.) The plaintiff argues that the ALJ made three errors in this determination.

First, he says that he cannot "respond appropriately to coworkers and supervisors" because he lost a job when he "mouthed off" to his employer, he has bursts of anger, and prefers to "self-isolate" at home. (ECF No. 18-1.) There is evidence in the record to support the plaintiff's view (*e.g.*, R. at 411), but there is also substantial evidence to support the ALJ's conclusion. For example, Mr. Santiago worked part-time during the relevant period, told his doctor that "work is ok," and told his therapist that he was "happy" about working; this evinces an ability to work appropriately with coworkers and supervisors. (*E.g.*, *id.* at 325, 479, 553.) There is, therefore, substantial evidence that Mr. Santiago can respond appropriately to coworkers and supervisors. *Crossman*, 783 F. Supp. 2d at 303 ("'Substantial evidence' is less than a preponderance, but 'more than a mere scintilla' and as much as 'a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Richardson*, 402 U.S. at 401)).

Second, he says that he cannot "respond appropriately to occasional and superficial interaction with the general public." (ECF No. 18-1 at 20.) To support this argument, he points

out places in the record where he testified that he does not like to be around other people and where his therapist said that he has "'an obvious problem' interacting appropriately with others in a work environment and respecting/responding appropriately to others in authority." (ECF No. 18-1 at 20 (quoting R. at 411–12).) His therapist also noted that he "avoids social situations" and is "[e]asily irritated." (R. at 412.) The ALJ considered this evidence: "Although the claimant complains of irritability and anger issues, he is noted to be appropriate and supportive during group therapy. (Exhibits 1F, 4F and 6F)" (*Id.* at 69.) She noted that Dr. Feuer said that the plaintiff is "holding his own with respect to mood, thought process and behavior." (*Id.* at 69, 576.) The ALJ said that the plaintiff "reported that he feels good five out of seven days." (*Id.* at 69 (quoting *id.* at 509 ("Pt reports doing 'ok' about 5/7 days each week."))).) She pointed out that he reported that his medication is effective and he can "articulate appropriate coping skills to manage his stress and anger" (*id.* at 70), which is supported by the record (*e.g.*, *id.* at 430, 432, 436, 438, 461, 473, 481, 545, 553.) A reasonable mind could accept these facts as sufficient evidence that Mr. Santiago is capable of "occasional and superficial interaction with the general public." There is, therefore, substantial evidence to support the ALJ's conclusion.

Third, Mr. Santiago says that he cannot "understand, remember and carry out simple, routine and repetitive tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis." (ECF No. 18-1 at 20.) The plaintiff points to his testimony about his obsessive-compulsive symptoms and that he has trouble concentrating. (R. at 104–07.)

Throughout the plaintiff's brief, he refers to a report by Sara Miller, his therapist. (*E.g.*, ECF No. 18-1 at 20 citing R. at 412.) In the same report, his therapist evaluated him for five areas of "Task Performance." (R. at 412.) She determined that he had "No Problem" with (1) "[c]arrying out single-step instructions," (2) "[c]arrying out multi-step instructions," (3)

"[f]ocusing long enough to finish assigned simple activities or tasks," (4) "[p]erforming basic work activities at a reasonable pace/finishing time," and (5) "[p]erformining work activity on a sustained basis (i.e., 8 hrs per day, 5 days a week)." (*Id.* at 411–12.) As for his obsessive-compulsive behavior, the ALJ said "there is no specific mention of ritualistic or obsessive behavior in any treatment records." (*Id.* at 70.) This is also supported by the record; although not pointed out by the parties, the most specific reference appears to be the comment by Dr. Feuer that the plaintiff "brought up long standing OCD [symptoms] which are distressing and fairly classic in nature (with checking and counting)." (*Id.* at 492.) Dr. Feuer's statement is not enough to conclude that the ALJ's decision is not supported by substantial evidence. In that same report, Dr. Feuer noted that the plaintiff reported that work was "ok" and that his relationship was "doing better." (*Id.*) On this record, one would not have to conclude that Mr. Santiago's obsessive compulsive symptoms prevented him from being able to "understand, remember and carry out simple, routine and repetitive tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis." *Brault*, 683 F.3d at 448; (ECF No. 18-1 at 20). Therefore, the ALJ's determination of Mr. Santiago's RFC is supported by substantial evidence.

## F.    The Determination That the Plaintiff Could Perform His Past Relevant Work

The plaintiff argues that the ALJ improperly determined that the plaintiff could perform his past relevant work. (ECF No. 18-1 at 22.) The regulations explain the SSA's procedures: "At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled." 20 C.F.R. § 416.920(a)(iv). "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). "If we find that you have the residual functional capacity to do your

past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy." 20 C.F.R. § 416.960(b)(3).

The ALJ determined that the plaintiff was capable of performing his past relevant work as an airplane-parts injection-molding machine tender and a store laborer. (R. at 72–73.) As discussed above, the ALJ properly found that:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can respond appropriately to occasional and superficial interaction with the general public. He can respond appropriately to coworkers and supervisors for work related matters without teamwork or collaboration. He can understand, remember and carry out simple, routine and repetitive tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis. The claimant can make simple work related decisions and adapt to simple, occasional changes in the routine work setting.

(R. at 68.)

This RFC supports the ALJ's conclusion that the plaintiff can perform his prior work. The plaintiff contends that he never worked as a "store laborer, under the Dictionary of Occupational Titles ("DOT") Code 922.687-058, but rather testified that he worked as a "shelf-stocker," a reasoning level three job, under DOT Code 299.367-014. (ECF No. 18-1 at 22.) The plaintiff also states that he can only perform a job with a reasoning level one, which would prevent him from performing his past relevant work. (*Id.*)

The description for store laborer, DOT Code 922.687-058, reads in part: "Sorts and places materials or items on racks, shelves, or in bins according to predetermined sequence, such

20

as size, type, style, color, or product code." This accurately reflects the plaintiff's testimony that:

> [T]hey gave me a job as sorting out aisle[s] for a store they were opening . . . .[T]hey would give me a box, and they would say just, you know put that right there, and put that in the other shelf. And it was just, you know regular things at once and ten different things. It was just one item at a time.

(R. at 86.) This testimony is consistent with the DOT description for a store laborer. In any event, the plaintiff does not provide any citation to the record or otherwise to suggest that Mr. Santiago is not capable of performing the requisite "reasoning level." Further, the plaintiff provides no explanation as to how the ALJ's RFC determination is inconsistent with the ALJ's conclusion that Mr. Santiago can perform his past relevant work.

The plaintiff's final argument is that the ALJ ignored a vocational expert's testimony that a person who had "difficulty tolerating the demands of ordinary stress and would be absent from work two to three times a month" would be unable to work. (ECF No. 18-1 at 23; R. at 113.) I cannot infer from the absence of any mention of this testimony in the ALJ's opinion that she ignored this evidence. As discussed above, the ALJ properly determined the plaintiff's RFC. She did not determine that his RFC included an inability to tolerate the demands of ordinary stress or necessitated his absence from work two to three times a month. (R. at 68.) The ALJ did not err in comparing the plaintiff's RFC with the physical and mental demands of his past relevant work. 20 C.F.R. § 416.920(a)(iv).

## VI.    Conclusion

For the reasons set forth above, the plaintiff's motion for an order reversing or remanding the Commissioner's decision (ECF No. 18) is DENIED and the Commissioner's motion to

affirm that decision (ECF No. 25) is GRANTED.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                February 29, 2016